JTG Equip. & Supply, LLC v. EBay, Inc. d/b/a PayPal, Inc., 2015 NCBC 10.

STATE OF NORTH CAROLINA

COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
14 CVS 8822

JTG EQUIPMENT & SUPPLY, LLC, )
             Plaintiff )
              )
          v. )
              )
EBAY, INC. D/B/A PAYPAL, INC., )
             Defendant )

**OPINION AND ORDER
ON MOTION TO DISMISS**

THIS CAUSE, designated a mandatory complex business case by Order of the Chief Justice of the North Carolina Supreme Court pursuant to N.C. Gen. Stat. § 7A-45.4(b) (hereinafter, references to the North Carolina General Statutes will be to "G.S."), and assigned to the undersigned Special Superior Court Judge for Complex Business Cases, comes before the Court upon Defendant's Motion to Dismiss ("Motion") pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rule(s)"); and

THE COURT, after reviewing the Motion, briefs in support of and in opposition to the Motion, arguments of counsel and other appropriate matters of record, CONCLUDES that the Motion should be GRANTED for the reasons stated herein.

> *The Law Office of Robert L. Schupp, by Robert L. Schupp, Esq. for Plaintiff JTG Equipment & Supply, LLC.*

> *Parker Poe Adams & Bernstein, LLP, by Scott E. Bayzle, Esq. and Michael J. Crook, Esq. for Defendant EBay, Inc. d/b/a PayPal, Inc.*

McGuire, Judge.

PROCEDURAL HISTORY

1.     On July 3, 2014, Plaintiff JTG Equipment & Supply, LLC ("Plaintiff" or "JTG") filed a Complaint against Defendant EBay, Inc. d/b/a PayPal, Inc. ("Defendant" or "PayPal"). Plaintiff's action was designated No. 14 CVS 8822 by the Clerk of Superior Court of Wake

County. On July 31, 2014, Plaintiff filed an Amended Complaint in this action. The Amended Complaint alleges the following five causes of action ("Claim(s)"): Claim One (Breach of the Duty of Good Faith); Claim Two (Negligence); Claim Three (Negligent Misrepresentation); Claim Four (Unfair and Deceptive Trade Practices); and Claim Five (Breach of Contract).

2.     On September 15, 2014, Defendant filed the Motion, seeking dismissal of all Claims asserted in the Amended Complaint pursuant to Rule 12(b)(6). On January 8, 2015, the Court held a hearing on the Motion.

3.     The Motion has been fully briefed and argued, and is ripe for determination.

FACTUAL BACKGROUND

Among other things, the Amended Complaint alleges that:

4.     Plaintiff contracted to establish an account with Defendant whereby Defendant would receive money upon the sale of Plaintiff's products and would channel that money to Plaintiff upon Plaintiff's request.[1] The Parties' business relationship was governed by a User Agreement.[2]

5.     Plaintiff contracted to use PayPal's "Virtual Terminal Payments" service.[3] Virtual Terminal permits Plaintiff to take orders directly from customers over the telephone and input the customers' credit card information into the Virtual Terminal.[4] Once entered, PayPal verified the credit card information provided by the customer.[5] PayPal then collected the credit card payments and transferred those payments to Plaintiff.[6] After PayPal

---

[1] Am. Compl. ¶¶ 6-10.
[2] The User Agreement was not attached to the Amended Complaint, but was provided with Defendant's Motion to Dismiss. Plaintiff's Amended Complaint makes frequent reference to, and relies on, the User Agreement entered into between the Parties. Based on Plaintiff's reliance on the User Agreement in the Amended Complaint, the Court considers that document in resolving the Motion. *See Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 60-61 (2001).
[3] Am. Compl. ¶ 18.
[4] *Id.* ¶ 19.
[5] *Id.* ¶ 22.
[6] *Id.* ¶ 26.

transferred the funds from a credit card transaction to Plaintiff, it would send Plaintiff an email message that the transaction was "OK to Ship."[7]  After receiving the "OK to Ship" message from PayPal, Plaintiff shipped the product to the customer.[8]

6.　　Under the User Agreement, PayPal provides "Seller Protection" for certain transactions under which PayPal reimburses certain fees and payments, including chargebacks, on specific transactions. [9]  The express terms of the User Agreement provide that PayPal <u>will not</u> provide its Seller Protection to customers using the Virtual Terminal services.[10]  In addition, the User Agreement explicitly states that users of PayPal's services assume the risk for any Chargeback initiated by a buyer, and that PayPal shall be permitted to recoup any payments it has made to the service user if a Chargeback occurs.[11]  A "Chargeback means a request that a buyer files directly with his or her debit or credit card company or debit or credit card issuing bank to invalidate a payment."[12]  The User Agreement also contains a merger clause stating that the User Agreement was the "entire understanding" between the parties.[13]

7.　　The Complaint alleges that "Plaintiff's account was charged with multiple chargebacks" between July 2013 and January 2014 "from payments originally processed by PayPal."[14]  Each of the transactions was made using the Virtual Terminal Payments service.[15]  Plaintiff alleges that PayPal has refused to provide it with Seller Protection for these transactions and has refused to assist Plaintiff in recovering the products it shipped,

---

[7] Am. Compl. ¶¶ 23, 26.
[8] *Id.* ¶¶ 23, 25
[9] Def.'s Br. Supp. Mot. Dismiss, Ex. A (hereinafter, "User Agreement"), § 11.
[10] *Id.* §11.5.
[11] *Id.* at p. 1 and § 4.4.
[12] User Agreement, § 16.
[13] *Id.* at § 15.5.
[14] Am. Compl. ¶¶ 17, 20.
[15] *Id.* ¶ 18.

resulting in Plaintiff losing both the "money for the transactions and the products [ ] shipped."[16]

8. Despite the express terms of the User Agreement, Plaintiff now alleges that by sending the message "OK to Ship," PayPal misled Plaintiff to believe that the transaction was valid and would not be subject to chargebacks. Plaintiff seeks compensatory damages for, among other things "Plaintiff's equipment that was lost and was not recovered" and "[a]ll processing and chargeback fees PayPal charged to Plaintiff," and punitive damages.[17]

9. Plaintiff contends that the statement "OK to Ship," and Defendant's subsequent refusal to protect the transactions, constitutes a breach of contract. Plaintiff contends that stating that each product was "OK to Ship" breached Defendant's duty of good faith and fair dealing by giving the appearance that Plaintiff was protected in those transactions. Further, Plaintiff argues that the "OK to Ship" statement breached Defendant's duty of reasonable care, and therefore constituted negligence, and was a negligent misrepresentation and an unfair and deceptive trade practice.

DISCUSSION

10. The Court, in deciding a Rule 12(b)(6) motion, treats the well-pleaded allegations of the complaint as true and admitted. *Sutton v. Duke*, 277 N.C. 94, 98 (1970). However, conclusions of law or unwarranted deductions of fact are not deemed admitted. *Id*. The facts and permissible inferences set forth in the complaint are to be treated in a light most favorable to the nonmoving party. *Ford v. Peaches Entm't Corp.*, 83 N.C. App. 155, 156 (1986). As our Court of Appeals has noted, the "essential question" raised by a Rule 12(b)(6) motion is "whether the complaint, when liberally construed, states a claim upon which relief

---

[16] Am. Compl. ¶¶ 24, 31-33.
[17] *Id.*, prayer for relief.

can be granted on any theory." *Barnaby v. Boardman*, 70 N.C. App. 299, 302 (1984), *rev'd on other grounds*, 313 N.C. 565 (1985) (citations omitted).

11.     A Rule 12(b)(6) motion should be granted when the complaint, on its face, reveals (a) that no law supports the plaintiff's claim, (b) the absence of facts sufficient to form a viable claim, or (c) some fact which necessarily defeats the plaintiff's claim.  *Jackson v. Bumgardner*, 318 N.C. 172, 175 (1986).

### a.  Breach of Contract

12.     Plaintiff does not contend that Defendant breached the terms of the written User Agreement.[18]  Instead, Plaintiff argues that Defendant's "OK to Ship" message either created a new, implied contract between the parties or constituted a modification or waiver of the express terms of the User Agreement.[19]  The allegations in the Complaint do not support any of these theories, and Plaintiff's claims must fail.

13.     In order to state a claim for breach of contract under North Carolina or Delaware law,[20] a plaintiff must allege: (1) a contractual agreement; (2) breach of that agreement by the defendant; and (3) resulting damage to the plaintiff. *See McLamb v. T.P. Inc.*, 173 N.C. App. 586, 588 (2005); *see also H-M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 140 (Del. Ch. 2003).

14.     Plaintiff contends that the "OK to Ship" statement created a new, implied contract that superseded the terms of the User Agreement.  An implied contract is one in which the parties' mutual assent to be bound is manifested by their conduct and not by words.

---

[18] Pl.'s Brief Opp. Mot. Dismiss., p. 3.
[19] *Id.* pp. 3-6.
[20] The User Agreement contains a Delaware choice of law provision. *See* User Agreement, § 14.2. Plaintiff appears to acknowledge that it does not directly allege any violation of the User Agreement, though it does allege a modification of the User Agreement. Because the Court finds Plaintiff's basis of the breach of contract claim unclear, it will analyze Plaintiff's contract claim under Delaware and North Carolina law.

*Creech v. Melnik*, 347 N.C. 520, 526-27 (1998); *Snyder v. Freeman*, 300 N.C. 204, 218-219 (1980). An implied contract requires mutual assent, usually shown by an offer and acceptance, and a meeting of the minds as to the terms of the agreement. *Creech*, 347 N.C. at 527.

15. It has long been recognized, however, that "where there is an express contract between the parties, there can be no implied contract between them covering the same subject matter." *Snyder*, 300 N.C. at 218; *Mancuso v. Burton Farm Dev. Co. LLC,* __ N.C. App. __, 748 S.E.2d 738, 743 (2013) ("[i]t is a well-established principle that an express contract precludes an implied contract with reference to the same matter . . . so that, if there is a contract between the parties[,] the contract governs the claim and the law will not imply a contract") (internal citations omitted). The conclusion is the same under Delaware law. *See CIT Communs. Fin., Corp. v. Level 3 Communs., LLC*, 2008 Del. Super. LEXIS 225 at n. 29 (June 6, 2008). Here, the express terms of the User Agreement state that Virtual Terminal Payment transactions are not eligible for Seller Protection and, absent such protection, Plaintiff is liable for any chargebacks. The User Agreement governs the allocation of risk in the event of a chargeback, therefore there can be no implied contract covering the same subject matter. Consequently, Plaintiff's contention that the "OK to Ship" statement constituted an implied contract fails.

16. Plaintiff also contends that the "OK to Ship" statement modified or waived the terms of the User Agreement and obligated Defendant to provide Seller Protection for the chargebacks. Plaintiff argues that the representation "OK to Ship" constituted an undertaking by Defendant to warranty and protect Plaintiff's shipments from precisely the risks that the User Agreement provides Plaintiff will not be protected.

17. The North Carolina Supreme Court has long recognized that "[i]n the formation of a contract an offer and an acceptance are essential elements." *Dodds v. St.*

*Louis Union Trust Co.*, 205 N.C. 153, 156 (1933); *accord James J. Gory Mech. Contr., Inc. v. BPG Residential Partners V, LLC*, 2011 Del. Ch. LEXIS 200, *6 (Del. Ch. Dec. 30, 2011). To support a contractual relationship, "[t]he offer must be communicated, must be complete, and must be accepted in its exact terms." *Dodds*, 205 N.C. at 156. The offer "must specify all the essential terms" of the agreement and, therefore, a contract will only be valid if the parties' minds "meet as to all essential terms." *Braun v. Glade Valley School, Inc.*, 77 N.C. App. 83, 89 (1985). *See also Sandcastle Realty, Inc. v. Castagna*, 2006 Del. Ch. LEXIS 147, *6 (Del. Ch. 2006) (recognizing that an acceptance must be on identical terms as an offer to constitute a "meeting of the minds," and therefore a valid contract).

18. In support of its contract claim, Plaintiff only alleges that Defendant made the representation "OK to Ship" after Defendant had fulfilled its obligations under the User Agreement to verify customers' credit card information and collect funds. Plaintiff does not allege that Defendant made any other representation, or had any other contact with Plaintiff between the time credit cards were verified and the "OK to Ship" representation was made. Plaintiff's breach of contract claim appears, then, to rest on the contention that "OK to Ship" constituted an offer that was subsequently accepted by Plaintiff shipping the goods sold to its customers.[21] That term, however, does not provide any terms of the offer or other description of the protection Defendant allegedly offered to Plaintiff. The Court finds no factual support in the Amended Complaint for Plaintiff's conclusory determination that the "OK to Ship" representation constituted an "undertaking [of a] duty to warrant to Plaintiff that Plaintiff could safely ship its goods."[22]

19. The absence of any factual allegations indicating an offer to assume this duty is highlighted by the repeated representations in the User Agreement, and Plaintiff's own

---

[21] *See* Pl.'s Br. Opp. Mot. Dismiss, p. 6.
[22] Pl.'s Br. Opp. Mot. Dismiss p. 3.

Amended Complaint, that Defendant will not provide Seller Protection for Virtual Terminal Payment transactions. Based on these representations, the Court finds that Plaintiff's interpretation of "OK to Ship" as constituting an offer to undertake the precise duties the User Agreement provided it would not is without merit and lacks any factual support sufficient to state a viable claim for breach of contract. *See Jackson, supra*.

20.      Even if the Court were to find that "OK to Ship" was sufficiently definite to constitute a contractual offer, a modification or waiver of the terms of an express agreement must also be supported by new consideration. *Brenner v. Little Red School House, Ltd.*, 302 N.C. 207, 215 (1981); *see also Hudson v. Wesley College*, 1994 Del. Ch. LEXIS 137 (Aug. 1, 1994). "To constitute consideration, a performance or return promise must be bargained for," meaning that "the consideration induces the making of the promise and the promise induces the furnishing of the consideration." *Chem. Realty Corp. v. Home Federal Sav. & Loan Assoc.*, 84 N.C. App. 27, 31 (1987); *accord Continental Ins. Co. v. Rutledge & Co.*, 750 A.2d 1219, 1232 (Del. Ch. 2000) (recognizing that "Delaware courts define consideration as a benefit to a promisor or a detriment to a promisee *pursuant to the promisor's request*") (emphasis added).

21.      Plaintiff has not alleged it provided any bargained for consideration to Defendant that would support such a modification to or waiver of the User Agreement. Rather, the Amended Complaint simply alleges that, upon receiving the "OK to Ship" message, "Plaintiff shipped the products to the purported customer."[23] Plaintiff does not allege that it shipped the goods in exchange for the "OK to Ship" representation, nor does Plaintiff allege that Defendant sought the shipment of goods or otherwise induced the shipment. The most favorable reading of Plaintiff's Amended Complaint alleges, at most,

---

[23] Am. Compl. ¶¶ 23-25.

that Plaintiff may have relied on the "OK to Ship" statement. Such reliance without a bargained for exchange or inducement, however, is insufficient to substitute for consideration. *See Chem. Realty Corp.*, 84 N.C. App. at 31.[24] Consequently, even if the Court were to find that Plaintiff has sufficiently stated a definite offer in the "OK to Ship" statement, the Court finds that the failure to plead the existence of any consideration is fatal to Plaintiff's claim for breach of contract.

22.     For the reasons stated above, the Court finds that Plaintiff has failed to allege the existence of a valid contract, or a valid modification or waiver of the User Agreement, arising from the "OK to Ship" statement and, as such, the Motion as to Plaintiff's Breach of Contract Claim should be GRANTED.

**b.  Breach of the Duty of Good Faith**

23.     Plaintiff alleges that Defendant owed Plaintiff a duty of good faith and fair dealing, which includes the duty to protect Plaintiff from fraudulent orders and to act in the best interests of Plaintiff.[25] Plaintiff contends this duty was breached by Defendant's statement that the products were "OK to Ship" by giving the appearance that the products were protected and that, as a result, Plaintiff was forced to bear the risk of loss.

24.     Courts will not apply an implied covenant of good faith and fair dealing to override the express terms of a contract. *See Campbell v. Blount*, 24 N.C. App 368, 371 (1975); *see also Kuroda v. SPJS Holdings, LLC*, 971 A.2d 872, 888 (Del. Ch. 2009). The User

---

[24] The Court recognizes that, in certain limited circumstances, the theory of promissory estoppel may substitute "for a want of consideration." *See Chem. Realty Corp.*, 84 N.C. App. at 33, n. 2. As in *Chemical Realty Corporation*, however, Plaintiff has not asserted any such theory in the Amended Complaint or at the hearing on the Motion and has not pleaded sufficient facts to state such a claim under Delaware law. *See Harmon v. Del. Harness Racing Comm'n*, 62 A.3d 1198 (2013) (listing elements for a promissory estoppel claim under Delaware law). Moreover, North Carolina courts have rejected such "offensive" use of promissory estoppel to enforce promises lacking consideration in cases with similar procedural postures. *See Home Electric Co. v. Hall & Underdown Heating & Air Conditioning Co.*, 86 N.C. App. 540, 543 (1987), *aff'd per curiam* 322 N.C. 107 (1988).
[25] Am. Compl. ¶¶ 11-13.

Agreement expressly states the circumstances under which Defendant will and will not provide Seller Protection, and makes clear that the transactions of which Plaintiff now complains were not covered by Seller Protection. Plaintiff cannot maintain a claim for breach of the duty of good faith that, as here, would "override the express terms" of the User Agreement.

25.     In response, Plaintiff argues that the Parties' modification or waiver of the terms of the User Agreement, not the User Agreement itself, gives rise to the duty of good faith as propounded by Plaintiff.[26] Because that modification or waiver, Plaintiff argues, is silent as to the level of protection owed based on the "OK to Ship" statement, the duty of good faith may be invoked here. However, because the Court has already found that Plaintiff failed to allege the existence of any valid modification or waiver, Plaintiff's claim for the breach of the duty of good faith based on that modification or waiver necessarily must fail. As a result, the Court finds that the Motion as to Plaintiff's claim for breach of the duty of good faith should be GRANTED.

### c.  Negligence

26.     To state a claim for negligence, "a plaintiff must allege: (1) a legal duty; (2) a breach thereof; and (3) injury proximately caused by the breach." *Stein v. Asheville City Bd. of Educ.*, 360 N.C. 321, 328 (2006). This Court has recognized that "parties to a contract 'owe no special duty to one another beyond the terms of the contract.'" *Charlotte-Mecklenburg Hosp. Auth. v. Wachovia Bank, N.A.*, 2009 NCBC LEXIS 33, ¶ 17 (N.C. Super. Ct. Oct. 6, 2009) (quoting *Branch Banking & Trust Co. v. Thompson*, 107 N.C. App. 53, 61 (1992)). As such, the duty of a contracting party is to perform its obligations under the contract "with

---

[26] Pl.'s Brief Opp. Mot. Dismiss, pp. 13-15.

ordinary care." *See Olympic Prods. Co., Div. of Cone Mills Corp. v. Roof Sys., Inc.*, 88 N.C. App. 315, 322 (1999).

27.   Here, Plaintiff has alleged that the parties entered into a contractual relationship governed by the User Agreement.  Plaintiff concedes that PayPal did not violate the User Agreement.  Plaintiff has not alleged that Defendant negligently performed any of its obligations under the User Agreement. Plaintiff has not alleged any facts to suggest that Defendant acted negligently in the course of verifying credit cards. Rather, Plaintiff alleges that, at the time the "OK to Ship" representation was made, Defendant had in fact verified the credit card transactions and only after that verification were chargebacks initiated by the purchaser. Moreover, Plaintiff has not alleged any facts to suggest that, when a given transaction was verified, Defendant had reason to know that any chargeback would occur. Additionally, given the Court's rejection of Plaintiff's other contract theories, Plaintiff's assertion of a negligence claim based on Defendant's failure to exercise due care in the performance of any implied contract, modification, or waiver necessarily fails.

28.   Because the parties' relationship is governed by contract and Plaintiff has failed to allege the negligent performance of any duty under that contract, the Motion as to Plaintiff's claim for negligence should be GRANTED.

### d.  Negligent Misrepresentation

29.   Negligent Misrepresentation, in North Carolina, "occurs when a party justifiably relies to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 322 N.C. 200, 206 (1988), *rev'd on other grounds*, 329 N.C. 646 (1991). Critical to the instant case, Plaintiff must allege a representation made without due care upon which Plaintiff reasonably relied.

30. Plaintiff alleges that the statement "OK to Ship" constituted a false representation that the credit cards used by Plaintiff's customers had been verified. However, Plaintiff expressly alleges that the representation "OK to Ship" was made only after the cards had been verified.[27] Plaintiff further alleges that the funds for the transaction were then placed in Plaintiff's PayPal account.[28] As discussed above, it was only after the transaction was initially verified and after funds were deposited into Plaintiff's PayPal account that Plaintiff alleges the chargebacks were initiated by Plaintiff's own customers and the money was withdrawn by Defendant. As such, the Amended Complaint on its face alleges that, at the time the "OK to Ship" representations were made, the transaction had been verified by Defendant.[29] Plaintiff has not alleged that Defendant had any reason to know, at the time the "OK to Ship" representation was made, that a third party would subsequently initiate a chargeback on any given transaction. As a result, even if the Court were to accept Plaintiff's theory that "OK to Ship" somehow constituted a warranty on the transaction, Plaintiff has alleged that at the time the representation was made, the transactions had, in fact, been verified by Defendant. As such, Plaintiff has pleaded facts that "necessarily defeat" Plaintiff's negligent misrepresentation claim. *See Jackson, supra.*

31. Furthermore, even if Plaintiff has sufficiently alleged that the "OK to Ship" statement constituted a false or negligent representation, Plaintiff has not alleged reasonable reliance on that representation. Plaintiff alleges that the "OK to Ship" statement gave the appearance that Plaintiff was protected in making the shipment and that, based on that representation, Plaintiff shipped the goods. Plaintiff specifically alleges that despite making the "OK to Ship" representation Defendant did not provide Seller Protection to Plaintiff.

[27] Am. Compl. ¶¶ 22-23.
[28] *Id.* ¶¶ 23-23, 25-26
[29] *Id.* ¶ 23.

However, the Amended Complaint itself expressly alleges that Seller Protection will not apply to Plaintiff's transactions. As such, the Court finds that Plaintiff's reliance on the statement "OK to Ship" as providing Seller Protection, or any comparable protection against the risk of chargebacks, to Plaintiff is unreasonable as a matter of law based on Plaintiff's own allegations.

32. Because Plaintiff has alleged facts that necessarily defeat its negligent misrepresentation claim, the Court finds that the Motion as to this claim should be GRANTED.

### e. Unfair and Deceptive Trade Practices

33. Plaintiff alleges that Defendant's conduct constitutes an unfair and deceptive trade practice under G.S. § 75-1.1 and under Delaware Code Ann., Title VI, § 2532. As an initial matter, Plaintiff failed to provide any response to Defendant's Motion to Dismiss the claim premised on Delaware law and, pursuant to BCR 15.11, that claim is deemed abandoned and the Motion should be GRANTED to the extent the Amended Complaint seeks relief under Delaware law.

34. To state a claim under G.S. § 75-1.1, Plaintiff must allege facts sufficient to show (1) an unfair or deceptive act or practice or an unfair method of competition; (2) in or affecting commerce; (3) that proximate causes actual injury to the Plaintiff. *See RD&J Props. v. Lauralea-Dilton Enters.*, LLC, 165 N.C. App. 737, 748 (2004). Generally, a breach of contract claim is insufficient to give rise to a claim under G.S. § 75-1.1 absent a showing of aggravating or egregious circumstances. *Dalton v. Camp*, 353 N.C. 647, 657 (2001). The determination of "[w]hether an act or practice is unfair or deceptive in violation of [G.S. § 75-1.1] is a question of law for the [C]ourt." *Tel Servs. v. Gen. Tel. Co.*, 92 N.C. App. 90, 92 (1988).

35. Here, the Court finds that Plaintiff has failed to allege sufficient facts as to the first or third elements of a claim for violation of the North Carolina Unfair and Deceptive

Trade Practices Act. Plaintiff alleges only that Defendant's "OK to Ship" notification caused the likelihood of confusion or misunderstanding regarding the level of protection Defendant would provide to Plaintiff under their contractual arrangement.[30] The express language in the User Agreement clearly states that Virtual Terminal Payment transactions will not receive any Seller Protection, and that Plaintiff bears the risk for any subsequent chargebacks. In light of the express terms of the User Agreement, and Plaintiff's allegation that the User Agreement expressly exempted transactions using the Virtual Terminal Payment service from Defendant's Seller Protection, Plaintiff has failed to allege any act that could be considered unfair or deceptive. Given the express language in the User Agreement, the "OK to Ship" notification, without more, cannot as a matter of law be considered unfair or deceptive. As such, the Court finds that the Motion as to Plaintiff's claim for violation of G.S. § 75-1.1 should be GRANTED.

## CONCLUSION

36. Based on the foregoing, the Court concludes that Plaintiff has failed to state a claim upon which relief can be granted for any of the enumerated Claims in the Amended Complaint. As such, the Court concludes that the Motion should be GRANTED.

NOW THEREFORE, IT IS ORDERED that Defendant's Motion to Dismiss pursuant to Rule 12(b)(6) is GRANTED and this action is DISMISSED, WITH PREJUDICE.

This the 23rd day of January, 2015.

---

[30] *See* Am. Compl. ¶¶ 52-54, 56-57.